UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                       **MEMORANDUM & ORDER**
-against-                                                       04-CR-143 (DRH)

MICHAEL BROWN,

        Defendant.
-----------------------------------------------------------X

**APPEARANCES:**

**For the Government:**
       Richard P. Donoghue
       United States Attorney
       Eastern District of New York
       100 Federal Plaza
       Central Islip, New York 11722
       By:   Burton T. Ryan, A.U.S.A.

**For Defendant:**
       Federal Defenders of New York, Inc.
       770 Federal Plaza
       Central Islip, New York 11722
       By:   Lakeytria W. Felder, Esq.

**HURLEY, Senior District Judge:**

       The purpose of this Memorandum is to address the motion of defendant Michael Brown ("Defendant"), filed on April 13, 2020, for compassionate release, pursuant to 18 U.S.C. 3582(c)(1)(A)(i), so that he may serve the last five months of his eighteen month revocation sentence at home. (*See* DE 340 at 1.) For the reasons set forth below, the motion is denied.

# BACKGROUND

## I. Conduct Underlying the Counts of Conviction

Defendant, a member of the Bloods gang, was arrested in 2004 as a result of his participation in efforts to use an explosive device to harm members of MS-13, a rival gang. On October 6, 2004 he pled guilty to one count of conspiracy to assault and one count of using a Molotov cocktail. Thereafter, he was sentenced to ten years six months in jail followed by three years of supervised release, to run concurrent to Defendant's conviction of New York State offenses, which occurred while defendant was released on bail pending the federal sentencing. After completing the term of incarceration, he began his term of supervised release. During supervised release he was subject to one summons and two arrest warrants. On each of the foregoing occasions he admitted the violation and although given additional leeway to submit to renewed alcohol and/or drug treatment, failed to participate in that treatment. On March 9, 2018, Defendant was sentenced to 18 months imprisonment for his failure to complete substance abuse treatment and for possession of a controlled substance.

## II. The Current Application

Plaintiff is currently incarcerated at the Metropolitan Correctional Center ("MCC") in Manhattan. According to his application, he "has been identified by MCC as a person vulnerable to coronavirus and its complications due to his medical history and diagnoses. (DE 72 at 1.) He asserts that he has hypertension, treated

with hydrochlorothiazide,[1] and the current Covid-19 pandemic "poses extraordinary risks to [his] health. (*Id.*) On March 31, 2020, Defendant's request for compassionate relief was sent by email to the MCC warden. He seeks to have this Court waive the exhaustion requirement 18 U.S.C. 3582(c)(1)(A ).

## **DISCUSSION**

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the basis for the current application, provides:

> The court may not modify a term of imprisonment once it has been imposed except that - -
>
> (1) in any case - -
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in 3553(a) to the extent that they are applicable, if it finds that - -
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a

---

[1] The Court notes parenthetically that no medical records supporting his condition were submitted with the instant application. Nor does the application set forth his age or any specifics as to his mother's home, the proposed place of home confinement.

>danger to the safety of any other person or the community under section 3142(g);
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582 ((c)(1)(A).

Section 3582 allows a motion for compassionate relief to be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Under its terms, a district court may not modify the term of imprisonment on motion brought by a defendant who has not "fully exhausted all administrative rights."

According to Defendant, "[t]he Court need not wait for [Defendant] to exhaust administrative remedies under § 3582(c)(1)(A), as this will almost assuredly exacerbate an already impending public health catastrophe in our jails and prisons, while posing a particular and real danger to [Defendant]." (DE 72 at 7.)

The district courts in the Second Circuit are not unanimous in whether the exhaustion requirement in § 3582(c)(1)(A) can be waived. *United States v. Woodson*, 2020 WL 1673253 (S.D.N.Y. April 6, 2020) (noting lack of unanimity and citing cases). *E.g. compare United States v. Wright*, 2020 WL 1922371 (S.D.N.Y. Apr. 20, 2020) (no waiver), *United States v. Roberts*, 2020 WL 1700032 (Apr. 8, 2020), (same), *Unites States v. Ogarro*, 2020 WL 1876300 (S.D.N.Y. Apr. 14, 2020) *with*

Page **4** of **9**

*United States v. Zuckerman*, 2020 WL 1659880 (Apr. 3, 2020) (waiving exhaustion in view of Covid-19); *United States of America, v. Perez*, --- F. Supp. 3d ---, 2020 WL 1546422 (Apr. 1. 2020) (same); *United States v. Colvin*, 2020 WL 1613943 (Apr. 2, 2020) (same).

The only appellate court to have addressed the question in reference to the current pandemic has required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added — and critical— importance." *Id*. at *2.

Here, the exhaustion requirement is statutory, opposed to judicially imposed. The Second Circuit "has explained that the distinction between the two exhaustion requirements can be 'pivotal,' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (internal citation omitted). Where an exhaustion requirement is judicially imposed, it is subject to judge-made exceptions. *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998); *Washington v. Barr*, 925 F.3d 109, 115; 118-19 (2d Cir. 2019) (noting that the relevant statute did "not expressly mandate the exhaustion

of administrative remedies" and listing exceptions to the exhaustion requirement). However, "a statutory exhaustion provision stands on different footing." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). "[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements." *Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2004).

Pointing to the decisions concerning the exhaustion requirements in other statutes, such as the Social Security Act, Title VII and habeas petitions, Defendant maintains that § 3582(c)(1)(A)'s "exhaustion requirement is not like other statutory exhaustion requirements, which expressly deprive federal courts of jurisdiction to hear disputes in the absence of exhaustion." (DE 72 at 9-10) Rather, it is posited, that the section "merely controls who (the BOP or the Defendant) moves for compassionate release before the Court and when . . . ." (*Id.* at 10). The Court disagrees. The statute limits a district's court's jurisdiction to modify a sentence to limited circumstances. As it "govern[s] a court's adjudicatory authority," it is not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). But regardless of whether the statute's exhaustion requirement is jurisdictional or a claim-processing rule, its exhaustion requirements are mandatory.

In *United States v. Roberts*, Judge Furman recently distinguished the waivability of the exhaustion requirements in the Social Security Act and Title VII from that in Section 3582(c). His reasoning is persuasive:

> The flexibility interpreted in the Social Security Act stems from its language providing for judicial review "after any final decision" by the

agency, reflecting Congress's "intent to use [the] term ['final decision'] expansively." *Smith*, 139 S. Ct. at 1774 (emphasis added). The language of Section 3582(c)(1)(A), by contrast, is substantially more restrictive, requiring the defendant either to exhaust "all administrative rights to appeal" or to wait "30 days from the receipt of such a request by the warden." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The Second Circuit's interpretation of Title VII, on the other hand, relied heavily on *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), which concluded from the legislative history of Title VII that the requirement to file an EEOC charge was intended to "operate as a statute of limitations" and thus, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393-94; *see also Francis*, 235 F.3d at 767. [Defendant] has identified no comparable legislative history for Section 3582(c). In fact, the legislative history that [defendant] cites indicates that Congress recognized the importance of expediting applications for compassionate release and still chose to require a thirty-day waiting period. Under *Ross*, the Court must abide by Congress's choice, given Section 3582(c)'s clear command that the Court "may not" grant compassionate release except under the conditions Congress prescribed.

2020 WL 1700032, at *2. *Accord United States v. Wright*, 2020 WL 1922371 (S.D.N.Y. Apr. 20, 2020).

While the current health emergency warrants consideration of compassionate release requests in an expedited manner, Section 3582 does not allow for the waiver of exhaustion due to exigent circumstances. As one court has noted:

[T]he text [of section 3582] affirmatively refutes the availability of such an exception in two respects. First, while many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court[,] Section 3582 provides an alternative: exhaustion of all administrative rights or the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This alternative suggests that the Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the BOP should have at least 30 days to act on such a request. Second, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14

> days. That the Congress allowed 14 days to process the claims of even
> a terminally ill inmate suggests that it could not have intended to
> allow a shorter period – which excusing exhaustion would provide – in
> a case, such as this, where the risk to the inmate, while serious,
> remains potential.

*Wright*, 2020 WL 1922371 at * 2.

Finally, it is noteworthy that the recently passed CARES Act, Pub. L. No. 116-136, includes certain provisions specifically designed to redress the concern that prisons will see high viral transmission rates. Specifically, it provides that "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the [BOP] Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2). 4 CARES Act § 12003(b)(2). "Clearly, Congress recognized the danger that COVID-19 poses to inmates and determined that the problem required a centralized response by a specialized agency in the executive branch, not piecemeal consideration by courts. It is not this Court's place to second guess Congress's policy determination." *United States v. Ogarro*, 2020 WL 1876300 (S.D.N.Y. Apr. 14, 2020) (citing *Ross v. Blake,* 136 S. Ct. 1850, 1857 (2016) (holding that "Congress sets the rules" and courts are not free to create "freewheeling" exceptions)); *see generally Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.")

## CONCLUSION

Defendant's application for compassionate release is denied for failure to exhaust administrative remedies.[2]

**SO ORDERED.**

Dated: Central Islip, New York       s/ Denis R. Hurley
      May 5, 2020                            Denis R. Hurley
                                                             United States District Judge

---

[2] While this application has been pending, the Court has received no information as to whether or not the BOP acted upon Defendant's request. To the extent that thirty (30) days may have passed without any action, Defendant should so advise the Court, in which case it will proceed to address the merits.